UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



DWAYNE WALKER, JR.,

                  **Plaintiff,**

            - against -

SHAWN CARTER, et al.,

                  **Defendant.**

**MEMORANDUM
OPINION & ORDER**

**12-CV-5384 (ALC)(RLE)**

**RONALD L. ELLIS, United States Magistrate Judge:**

## I.    INTRODUCTION

Plaintiff Walker commenced this action on July 12, 2012, alleging violations of the Copyright Act, 17 U.S.C. § 101, and common-law breach of contract by Defendants Shawn Carter, Damon Dash, Kareem Burke, Universal Music Group, Inc., Island Def Jam Music Group, and Roc-A-Fella Records, LLC. (Doc. No. 1) This action centers on an alleged 1995 handwritten contract between Defendants and Walker providing that in return for designing the Roc-A-Fella logo, Walker would receive an upfront payment of $3,500 in cash and 2% of all revenues made from the sale of all items bearing the logo. (*Id.*) On July 6, 2015, Walker filed a "Motion for Recusal of Magistrate Judge Ellis from this Case" arguing that "[t]here is a clear appearance of bias in these proceedings" and that the undersigned should recuse himself to "restore the appearance of impartiality." (Doc. No. 277)  For the reasons that follow, Walker's motion is **DENIED**.

## II.    DISCUSSION

**A.    Standard**

Federal judges must recuse themselves from proceedings in which their "impartiality

might be reasonably questioned" and in circumstances where, *inter alia*, they have "personal bias[es] or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455. Although this Circuit has interpreted the recusal standard broadly to encompass an "appearance" of bias, *In re Int'l Bus. Machines Corp.*, 618 F.2d 923, 929 (2d Cir. 1980), "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Rather, only when a judge has shown 'deep-seated favoritism or antagonism that would make fair judgment impossible' would a recusal motion lie." *Owen v. Soundview Fin. Grp., Inc.*, 208 F.3d 203 (2d Cir. 2000) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). As the court held in *Matter of International Business Machines Corp.*, "A trial judge must be free to make rulings on the merits without the apprehension that if he makes a disproportionate number in favor of one litigant, he may have created the impression of bias. Judicial independence cannot be subservient to a statistical study of the calls he has made during the contest." 618 F.2d at 929.

**B.    Analysis**

Walker alleges that the Court has been inconsistent in its reasoning and that the Court granted an order in Defendants' favor based upon ex-parte communications from Defendants without Walker's input. (Doc. No. 277 at 5.) In support of these contentions, Walker points to a series of decisions the Court made surrounding the deposition of Defendant Shawn Carter and the production of text messages from the Parties and third-party witnesses in discovery. (*Id.* at 6.) Walker mischaracterizes both the facts surrounding these decisions and the supporting rationale provided by the Court.

UMG Defendants served Walker with document requests on April 8, 2014, which included a request for "all communications with any witnesses or potential witness in this action

concerning this action." (Doc. No. 148-5 at 6.) On August 15, 2014, UMG also served a subpoena on David Sierra - one of Walker's witnesses who is also represented by Walker's counsel, Gregory Berry - asking for the same information. (Doc. No. 197-1) In a letter dated January 20, 2015, UMG moved the Court to compel the production of documents from Sierra. (Doc. No. 197) UMG informed the Court that despite Berry admitting Sierra "may" have text messages, Berry had stated he would not search for responsive text messages and would not produce documents more than a few hours in advance of Sierra's deposition. (Doc. No. 197-2) UMG further informed the Court that the bases for its motion included: 1) deposition testimony from other witnesses that Walker had text messaged them about the facts underlying this case; 2) excerpts of these conversations produced after the depositions took place; and 3) Berry's prior inaccurate representations that document production was complete. (*Id.* at 2.) UMG further provided exhibits demonstrating to the Court that its bases were documented. (*Id.*, Ex. C-E, G)

In a letter dated January 20, 2015, Berry asserted that UMG wanted recent text messages from Sierra while they "at the same time refuse[d] to search for or produce their own text messages from the same time period." (Doc. No. 196 at 1.) He argued that recent text messages "have no relevance to the issues at dispute in this case, which happened over ten years ago." (*Id.*) Berry further argued that there was "no real possibility" of "smoking gun evidence to impeach heavily corroborated testimony," but ultimately stated that "Sierra and the plaintiff do not feel strongly about the issue either way" so long as the rules "apply to everyone equally." (*Id.* at 2.)

During a conference held on February 17, 2015, Berry argued that if the Court ordered Sierra to produce text messages, the Court should also order that Defendant Shawn Carter's

phone and Defendant Damon Dash's phone be searched for responsive text messages.[1] (Doc. No. 245-1 at 5.) The Court explained to counsel that discovery is not an equation and that searches require good faith bases; Defendants had demonstrated a basis for a search of Sierra's phone while Walker had not demonstrated a basis for searching Carter's phone. The Court informed Berry that if he had anything suggesting that relevant evidence was on Carter's phone, he should provide it.[2] The underlying claim concerns an alleged contract twenty years ago. Without evidence that recent text messages would contain relevant information on the terms or existence of such a contract or a Party providing some other justification under Federal Rule of Civil Procedure 26, the Court indicated it would not order searches.

The Court ordered Sierra to produce at least ten days in advance of his deposition: 1) all communications between Sierra and any other individuals concerning this action; and 2) a privilege log of any withheld documents. The Court explicitly stated that this production had to include any communications discovered in a search of Sierra's phone and further held that the basis for the search was the undisputed fact that Walker had emailed and text messaged two other non-party witnesses in this case about the facts of this case. When asked why he had not produced text messages between Walker and other third-party witnesses in advance of their depositions, Berry stated that it had not occurred to him that text messages "are even something

---

[1]Berry previously raised the Carter text message issue in a letter dated September 11, 2014, as a component of a request that the Court compel Carter to produce documents and "take an active role in discovery going forward" in light of communication break-downs. (Doc. No. 132) In a telephone conference held with the Parties on September 12, 2014, the Court cautioned counsel for both Parties to be civil with each other or face sanctions. The Court further stated that all relevant discovery would be exchanged regardless of client recalcitrance, but did not reach the merits of the Carter text message issue.

[2]"There are clear, articulate facts to indicate that Walker is texting, and he's texting to people who are witnesses in this case, and that Sierra falls into the category. That's a reasonable basis for searching Sierra . . . [T]hat is what I mean by distinguishing between a particular situation . . . ." (H. Tr. Feb. 17, 2015, at 36.)

that need to be searched."[3]

On April 7, 2015, Defendants called the Court jointly and informed the Court that Sierra had failed to produce documents pursuant to the Court's February 17 Order. Sierra's deposition had been confirmed on March 2, 2015, to take place on April 13, 2015. Defendants indicated that their attempts to confer with Berry had been unsuccessful and that they had emailed Berry about the phone conference to obtain his participation.  The same day, the Court ordered Walker to produce the "Sierra Documents" by the close of business or show good cause by April 8, 2015, why he should not be sanctioned for failure to comply with the Court's February 17 Order requiring production by April 3. (Doc. No. 220)

By letter dated April 8, 2015, Berry confirmed that: 1) UMG had emailed him in advance about the joint phone call to the Court; and 2) he had not complied with the Court's February 17 Order. (Doc. No. 221) Although Berry made reference in his letter to "misrepresentations and omissions" allegedly made by UMG Defendants, the Court's April 7 Order did not rely on or respond to any information other than the undisputed fact that Walker had not complied with the Court's February 17 Order and had failed to adequately explain his non-compliance or to seek modification of the Order.[4]  Because Walker had failed to comply with the Court's clear Order, he was subject to sanctions. The February 17 Order gave him a chance to place an explanation in the record.

Walker incorrectly asserts that the basis for the Court's February 17 Order was the fact

---

[3]The Court notes that contrary to Berry's assertions that searching text messages had not occurred to him, Berry raised this issue with respect to Defendant Carter's cell phone in September of 2014. ( Doc. No. 132)

[4]In his April 8, 2015 letter Berry asserted that he had failed to comply with the Court's order because he had "trouble getting in touch" with his client the previous week. The Court ordered Berry to produce the Sierra documents on February 17, 2015, giving Berry ample time to confer with his client before April 3, 2015.

that Walker had "voluntarily" produced text messages between himself and third-party witnesses and that Defendants had not done so. (Doc. No. 277 at 6.) It was not, however, how the messages were produced that informed the Court's decision, but Walker's own admissions and the deposition testimony of Walker's witnesses.   Walker argues that his subsequent submission of an email that Damon Dash sent from his cell phone provides a basis for a search of Dash's phone. (*Id.* at 7.) Walker first presented this email to the Court as an attachment to a June 24 Letter Motion to Compel Discovery from Defendant Damon Dash, arguing that it was evidence that Dash had falsely represented that he had no responsive documents. (Doc. No. 262) The Court reviewed this email and determined at a June 25 conference with the Parties that it was not a sufficient basis to conclude that Dash had made false representations. Although Walker is correct that the subject line of the email was "Walker v. Carter et al, 12-cv-5384(ALC)(RLE)" and that all Parties in the case were recipients of the email, he fails to mention that the original email was from Walker's counsel, that Walker's counsel was the person who had "cc'd" all of the Parties, that Walker's counsel was the person who wrote the subject line, that Dash's message was only a reply to that email, and that Dash's reply merely stated: "What's this?" If Dash's response to Walker's counsel's email is an indication of anything, it is that Dash does not regularly communicate about this case via email. The Court did not suggest that the only means of providing a good faith basis for a search of Defendants' cell phones was providing the Court with messages from Defendants' phones, and it certainly did not suggest that the production of *any* message would open the door to a search. After reviewing the email and determining that it was not an affirmative communication about the case, the Court determined that it did not provide an adequate basis for ordering Dash to search his phone for responsive texts and emails.

Lastly, Walker points to the Court's decision precluding Carter from testifying and

denying Walker's motion to compel his deposition as evidence of inconsistent reasoning. Walker specifically argues that at a June 25, 2015 conference the Court "agreed with the plaintiff that since Carter was making factual claims, the plaintiff had the right to depose him" but decided that it was "too late to move the Court to compel Carter's deposition, as discovery was winding down." (Doc. No. 277 at 7.)

The Court first decided the Carter deposition issue in an Order dated December 8, 2014. (Doc. No. 164) Walker filed a letter on December 11, re-raising the Carter deposition issue and informing the Court that he intended to file an objection with the Honorable Andrew L. Carter, Jr. (Doc. No. 168) On May 28, 2015, Walker filed a second motion to compel Carter's deposition alleging that Carter was newly disputing whether or not he "used" the Roc-A-Fella logo in dispute. (Doc. No. 248) Walker further alleged that Counsel for UMG and Carter (at the time, the same person) had misled him by indicating that the only issue in dispute was whether Walker had actually created the logo. The record, however, reflected that the Answer denied any illegal use of the logo and that there was no document or oral representation by Defendants that the issues had been so limited. The Court did not "agree with Plaintiff" that he had the right to depose Carter at the June 25 conference. Rather, the Court informed Walker that without objective information the Court had no basis to determine that a new factual issue had arisen requiring reconsideration of its prior decision.

Walker's final argument is that since the Court has ordered the continuation of his deposition, discovery will not be complete for several months, and therefore, his application is timely. The Court notes that Walker's continued deposition was necessitated by his failure to produce responsive text messages in advance of his deposition. The Court further notes that the continued Walker deposition would have been completed if Walker had complied with the

7

Court's Order to complete the deposition on July 21, 2015. (Doc. No. 271)

The scheduling of that deposition arose at the June 25, 2015 status conference. UMG informed the Court that it intended to conduct a continued deposition of Walker "with all of the text messages that were produced after he was deposed." (Doc. No. 274 at 39.) In response to Berry's assertions that the deposition was not necessary and was designed to "torture" Walker, the Court stated: "If Ms. Arato takes his deposition and it's as useless as you say, I will sanction Ms. Arato." (*Id.* at 40.) Berry then stated, "Okay. There's another issue. He's currently living in Florida." (*Id.*) In response, Defendant UMG asserted that Walker was required to travel to this District for the deposition because he had chosen this forum. The Court indicated that the location of Walker's deposition would be a "question of reasonableness" and "what expense and time is necessary" rather than any foregone conclusion that the deposition had to be in one place. (Doc. No. 274 at 42.) The Court directed the Parties to discuss their options and, if they could not come to an agreement, present their positions to the Court. (*Id.* at 41.)

By letter dated June 29, 2015, Berry informed the Court that instead of conferring with counsel for UMG about the date and location of Walker's deposition after the June 25 conference, he had attempted to steer the Parties' conversation toward "why" Walker needed to be deposed, what UMG "wanted to ask the plaintiff about" and whether the continued deposition was "justified" with the Court. (Doc. No. 269) Walker later argued in a letter dated July 3, 2015, that "[w]hat dates are available for the plaintiff's new deposition was not relevant to any discussion we had at the June 25 conference. The discussion was about whether the Court would order Walker's new deposition . . . What dates the Parties are available is not [relevant]." (Doc. No. 273)

Berry's assertions that dates were irrelevant to the Court's June 25 Order and that the

Court had not yet decided whether or not the Walker deposition would take place are inconsistent with the discussion at the conference. The Court directly addressed Berry's concerns that the Walker deposition would be frivolous during the conference and Berry indicated that he understood the issue had been decided. Berry himself then directed the conversation toward the logistics of the deposition by raising the fact that Walker lived in Florida. The subsequent delays arising from Berry's refusal to confer with opposing counsel about his client's availability and precise location in Florida cannot now be relied upon as a ground for extending the discovery period.

### III.    CONCLUSION

For the aforementioned reasons, Walker's motion is **DENIED**.

**SO ORDERED this 24th day of July 2015.**
**New York, New York**

*[signature]*

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**